STATE, Plaintiff-Respondent, v. S & S MEATS, INC., as owner of defendant vehicle, Appellant: ONE 1976 PLYMOUTH TRAIL DUSTER VAN, IDENTIFICATION #AAOBE6X16999, WISCONSIN REGISTRATION NUMBER CE5562, ITS TOOLS & APPURTENANCES, Defendant.†

Court of Appeals

*No. 78-629. Submitted on briefs April 13, 1979.—
Decided September 25, 1979.*
(Also reported in 284 N.W.2d 712.)

† Petition to review denied.

For the appellant the cause was submitted on the briefs of *Mussallem Law Offices* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *Pamela Magee-Heilprin*, assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J.   This case involves the forfeiture of a vehicle allegedly used in illegal drug trafficking pursuant to the forfeiture provisions of sec. 161.55, Stats. The section is a part of the Uniform Controlled Substances Act. S & S Meats, Inc. (appellant), owner of the vehicle in question, appeals from a judgment of forfeiture entered by the circuit court for Dane County on

July 27, 1977, and from an order of that court refusing to reopen the judgment entered on July 6, 1978.

On July 7, 1976 the vehicle in question, a 1976 Plymouth Trail Duster Van, was tailed by a surveillance team of the Madison Metro Narcotics Squad from Stoughton, Wisconsin to Rockton, Illinois. Surveillance stopped somewhere between Rockton and Rockford, Illinois at about 6:30 p.m. on that day. The Rockford authorities, who were apparently to have picked up the tail, were unable to locate the vehicle after surveillance was dropped by the Wisconsin authorities. At about 4:20 a.m. on the following morning, the van was stopped on its return to Stoughton and searched pursuant to a warrant. At that time the van was being driven by Duane Hestnes, who is the incorporator and registered agent of the appellant. A person identified as Glenn Broom was sitting in the passenger seat of the van.

In the console between the driver's seat and the passenger's seat police discovered: 13.3 grams of a substance thought to be heroin; about an ounce and a half of a substance believed to be hashish; about seven grams of a material believed to be marijuana; paraphernalia typically used to inject heroin, consisting of a jar of vaseline, a spoon that appeared to be burned, a nylon stocking and three hypodermic syringes; a .32 caliber gun; a .38 caliber revolver; ammunition for the .38 revolver. A single shell for the .32 was found on Hestnes' person. In Broom's wallet was found a packet containing about one-third of a gram of a substance believed to be heroin. In the glove compartment was found a baggy containing a hand-rolled cigarette.

Both men were arrested. This action for civil forfeiture of the van was commenced on July 21, 1976. The complaint alleges that the van was used on the date in question to transport drugs for the purpose of sale within the meaning of sec. 161.55(1)(d), Stats., which provides that a vehicle used to transport controlled sub-

stances "acquired in violation of this act" is subject to forfeiture.[1]

Trial was held on March 16, 1977. An expert employed as a drug identification chemist at the Wisconsin State Crime Laboratory testified as to various tests which had been performed on the substances seized from the van. On the basis of those tests the witness concluded that the substance suspected of being heroin was heroin, and that the substances suspected to be marijuana and hashish, as well as the hand-rolled cigarette found in the glove compartment, all contained tetrahydrocannabinol, the active substance of marijuana and hashish. The expert testified that the active substance of heroin, diacetylmorphine, was present in the sample at 12.8% by weight.

Detective Frank McCoy testified that heroin was commonly sold in the Madison area with a percentage by weight of diacetylmorphine of about 5 percent, and that such heroin had a "street price" of $125 per gram. Marijuana sold at an average rate of $20 per ounce, and hashish at between $5 and $7 per gram, depending on the quality of the substances and the quantity in which they were purchased. The detective also testified that he knew Glenn Broom to have been a heroin user in the past but that he was not an addict at the time of arrest. He testified that he had examined Broom's arms at the time of arrest and that they showed no fresh needle marks, though they did reveal "some real old ones."

The trial court found to a reasonable certainty by the greater weight of the credible evidence[2] that one of the

---

[1] Appellant's reply brief attacks the complaint as being fatally defective, in that it frames the charge in disjunctive language. This issue was not before the trial court and will not be considered for the first time on appeal. *Arsand v. City of Franklin,* 83 Wis.2d 40, 55, 264 N.W.2d 579 (1978).

[2] This is the applicable burden of proof in forfeiture proceedings pursuant to sec. 161.555(3), Stats., which provides:

(3) BURDEN OF PROOF. The state shall have the burden of satisfying or convincing to a reasonable certainty by the greater

substances seized from the van was heroin. It inferred from the evidence as a whole that the heroin was being transported for purposes of sale in the Madison area. It noted that if the heroin in the form seized were "cut" to 5 percent diacetylmorphine, the street value of the quantity seized would have been worth $4,250. It rejected defense counsel's contention that the amount seized would last a heavy user but a short time, finding no evidence that either the driver or the passenger were addicts and, consequently, no evidence that the heroin was being transported for the personal use of either.

Subsequent to the entry of judgment of forfeiture, the appellant moved the trial court to reopen the judgment. Attached to the motion were a criminal complaint against Broom for possession of heroin arising out of his arrest on the morning of the incident in question, and a copy of a police officer's report concerning the booking of both Broom and Hestnes on that morning. Both the complaint and the report allege that Broom told officers on that night that he was a junkie and that he had hepatitis, and also that he showed them a bandage and needle marks on his arm. The trial court denied the motion, indicating that it was more impressed with that part of the report which read: "During incarceration Hestnes told me that he had been trying to get out of this business, and bought a house in Marshfield and was [sic] just wasn't quick enough in getting out of the business."

The following issues are raised on this appeal:

I. Whether the state must prove that a controlled substance was acquired in Wisconsin, as well as transported in Wisconsin, in order to justify forfeiture of the transporting vehicle within the meaning of the statute.

weight of the credible evidence that the property is subject to forfeiture under s. 161.55.

II. Whether the trial court's finding that the substance was being transported for sale is against the great weight and clear preponderance of the evidence.

III. Whether the trial court's finding that the substance was heroin is against the great weight and clear preponderance of the evidence.

## I. *Forfeiture of Transporting Vehicle.*

Section 161.55, Stats., provides, in relevant part, as follows:

(1) The following are subject to forfeiture:
(a) All controlled substances which have been manufactured, distributed, dispensed *or acquired in violation of this chapter;*
(b) All raw materials, products and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing or exporting any controlled substance in violation of this chapter;

. . .
(d) All *vehicles* . . . which are *used,* or intended for use, *to transport,* or in any manner to facilitate the transportation, *for the purpose of sale* or receipt of *property described in* pars. (a) and (b), . . . . (Emphasis supplied.)

The appellant contends that the evidence shows that the substances seized were probably "acquired" in Illinois. Consequently, it reasons, they cannot have been "acquired in violation of" Wisconsin law, which is applicable only to acts taking place in Wisconsin. It therefore contends that the heroin seized from the van was not "property described in" subparagraph (a) of sec. 161.55(1), Stats., and the van cannot be subject to forfeiture.

This argument overlooks the legislative intent to prohibit drug trafficking in this state. Though this statute

is penal in nature and must be strictly construed,[3] it is the duty of courts in construing statutes to search out the legislative purpose[4] and to identify the real wrong the legislature was attempting to remedy in enacting the statute.[5] The "literal meaning" approach to statutory construction cannot be used to avoid the obvious legislative purpose.[6]

The manifest purpose of the forfeiture provision in the Controlled Substances Act is to deter drug trafficking by permitting confiscation of the means used to further activities proscribed by the act. The usual theory advanced in support of permitting confiscation of vehicles used to transport drugs is that it deprives drug traffickers of a means to commit subsequent illegal acts and deprives such persons of needed mobility. *See* Commissioner's Note to Uniform Controlled Substances Act, 9 U.L.A. sec. 505 at p. 338 (1973). This theory has been recognized, although its fairness was questioned, by the Wisconsin Supreme Court in *State v. Rosen,* 72 Wis.2d 200, 206, 240 N.W.2d 168 (1976). Whether the theory is borne out in practice, the underlying intent of the legislature cannot be ignored in construing the statute.[7]

---

[3] *State v. Rosen,* 72 Wis.2d 200, 240 N.W.2d 168 (1976); *See Reeder v. Alabama,* 314 So.2d 853 (1975); *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 700, 85 S. Ct. 1246, 1250, 14 L. Ed.2d 170 (1964) ; *See also, Capt. Soma Boatline, Inc. v. Wisconsin Dells,* 56 Wis.2d 838, 845, 203 N.W.2d 369 (1973).

[4] " '. . . [T]he aim of all statutory construction is to discern the intent of the legislature. . . .' " *Wieczorek v. Franklin,* 82 Wis.2d 19, 23, 260 N.W.2d 650 (1978) *quoting Green Bay Packaging, Inc. v. ILHR Dept.,* 72 Wis.2d 26, 35, 240 N.W.2d 422 (1976).

[5] *Loof v. Rural Mut. Casualty Ins. Co.,* 14 Wis.2d 512, 516, 111 N.W.2d 583 (1961).

[6] *Town of Menominee v. Skubitz,* 53 Wis.2d 430, 437, 192 N.W.2d 887 (1972), Sands 2A *Sutherland, Statutory Construction,* sec. 48.01 at 182 (1973).

[7] *Milwaukee County v. ILHR Dept.,* 80 Wis.2d 445, 453, 259 N.W.2d 118 (1977).

Section 161.55 (1) (d), Stats., imposes a sanction on the act of transporting controlled substances, not on the act of acquiring them. Though the acquisition is not punishable under Wisconsin law if it did not occur in Wisconsin, the transportation of those substances in Wisconsin triggers the imposition of the forfeiture sanction, regardless of whether the substances were acquired. A contrary holding would impose a burden on the state to prove in each case the source of any controlled substances found in the vehicles transporting them in this state. In most cases such proof would be impossible to obtain.

Such a construction would also work an absurd result. Vehicles transporting controlled substances acquired in Wisconsin would be subject to forfeiture, while vehicles transporting the same substances acquired a short distance across the state's borders would be free from forfeiture, despite the obvious intent of the legislature to impose the sanction of confiscation on the act of transporting such substances in Wisconsin. Statutes susceptible of two meanings must be construed to avoid an unreasonable[8] or unconstitutional[9] result.

We therefore hold that a vehicle is subject to forfeiture under sec. 161.55 (1) (d), Stats., regardless of where the controlled substance transported by the vehicle was acquired.

## II. *Purpose of Sale.*

The appellant contends that Detective McCoy testified that the 13.3 grams of heroin seized from the van might have a street value in Madison of as little as $800, that

---

[8] *Cross v. Hebl*, 46 Wis.2d 356, 361, 174 N.W.2d 737 (1970).

[9] *State ex rel. Hammermill Paper Co. v. LaPlante*, 58 Wis.2d 32, 47, 205 N.W.2d 784 (1973).

this quantity is only a four-day supply for a junkie with a $200 per day habit, and that the evidence is insufficient to show that the heroin was being transported for purposes of sale rather than for the personal use of the vehicle's passenger, Broom.

The detective testified that in his six years of experience in the department, the lowest price for which a similar quantity of heroin had been purchased in a single "buy" was $800, and that the average price for that quantity was $1000 or so. The detective testified that the average price reflected the average 5 percent content of diacetylmorphine. The content of diacetylmorphine in the heroin seized in this case was 12.8 percent. The expert witness testified that she had performed several hundred tests on substances determined to be heroin, that the percentage of diacetylmorphine found in those samples had ranged from less than 1 percent to 15 percent, and that most of the samples had contained less than 3 percent diacetylmorphine.

The detective also testified that the price of heroin was higher when sold in single-gram quantities, rather than in half-ounce quantities.[10] The heroin in question, if cut to 5 percent diacetylmorphine, would have a street value of $4,250 if sold in single grams for $125 per gram. It would be worth $7,093.75 if cut to 3 percent and sold in single grams at that price.

On appeal this court views the evidence in a light most favorable to the trial court's findings of fact.[11] We have no hesitancy in holding that the evidence supports the

[10] An ounce is 28 grams. The 13.3 grams of heroin seized here was nearly one-half ounce, a not uncommon unit of sale according to the evidence.

[11] *Columbia Stamping & Mfg. Co. v. Reich,* 28 Wis.2d 297, 301, 137 N.W.2d 45 (1965) ; *Guinther v. Schucht,* 26 Wis.2d 97, 99, 131 N.W.2d 861 (1965).

trial court's finding that the heroin was being transported for the purpose of sale.

### III. *Sufficiency of Evidence.*

Appellant contends that the evidence was insufficient to show that the substances seized from the van were heroin, marijuana or hashish. The trial court made no finding as to the latter two substances, but found that the evidence was sufficient to establish that the former was heroin.

The crime laboratory expert testified that in her opinion, to a reasonable degree of scientific certainty, the substance was heroin. She based that opinion on three separate scientific tests she performed on the substance: a chemical spot test, a gas chromatography test, and an infrared spectrophotometry test. The witness was subjected to thorough and skillful cross-examination. She testified that the first two tests were "screening" tests from which she concluded that the substance was "possibly" heroin. The infrared spectrophotometry test involves the comparison of a graph obtained from a substance known to be heroin with a graph of the substance being tested, sometimes by comparing the graphs side by side, and sometimes by overlaying one graph upon the other. If the graphs "match," the tested substance is heroin. If they do not, the substance is not heroin. The test is specific, and is sometimes referred to by the experts as "the fingerprint of a molecule."

Appellant contends that the infrared spectrophotometry test proves that the substance is not heroin because the graphs do not match *identically*. The trial court rejected this argument. So do we. We have compared the graphs entered as exhibits in this case. While they do not match identically when the graph of the subject tested is placed over the graph of the subject known to be heroin,

the pattern of peaks and valleys shown by the tested subject closely parallels the pattern shown on the graph of the known heroin.

The witness did not testify that the "match" had to be identical in order to establish conclusively that a tested substance is heroin. She did answer affirmatively when counsel posed a leading question to the effect that an identical match would mean that the substances were the same. She was not asked, however, what range of variation might be scientifically permissible between the graphs in forming an expert conclusion that a tested substance "matches" a known substance. She was not asked to examine the graphs at trial or cross-examined on her conclusion that they did match. We cannot conclude that the trial court's finding that the substance was heroin is against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.