WISCONSIN EVANGELICAL LUTHERAN SYNOD, Claimant-Appellant,

v.

CITY OF PRAIRIE DU CHIEN, Defendant-Respondent.†

Court of Appeals

*No. 83–815. Submitted on briefs March 9, 1985.—Decided July 26, 1985.*
(Also reported in 373 N.W.2d 78.)

---

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the claimant-appellant the cause was submitted on the briefs of *Warren L. Kreunen, William C. Pickering, Timothy G. Dugan* and *von Briesen & Redmond, S.C.* of Milwaukee.

For the defendant-respondent the cause was submitted on the brief of *Mark A. Peterson* and *Peterson, Antoine & Peterson, S.C.* of Prairie du Chien.

Before Gartzke, P.J. Dykman, J. and Rudolph T. Randa, Reserve Judge.

DYKMAN, J.[1]  The Wisconsin Evangelical Lutheran Synod appeals from a summary judgment in favor of the city of Prairie du Chien. The Synod's complaint demanded a refund of property taxes paid under protest. The court held that certain parcels of the Synod's real property did not qualify for an exemption from general property taxes under sec. 70.11(4), Stats. (1979–80).[2]

---

[1] By order of the Chief Justice, the writing of this opinion was reassigned from Bablitch, J. to the author.

[2] All references to sec. 70.11(4), Stats., refer to the 1979–80 statutes. That section provides:

Property owned and used exclusively by educational institutions offering regular courses 6 months in the year; or by churches or religious, educational or benevolent associations, including benevolent nursing homes and retirement homes for the aged, and also including property owned and used for housing for pastors and their ordained assistants, members of religious orders and communities, and ordained teachers, whether or not contiguous to and a part of other property owned and used by such associations or churches; or by women's clubs; or by domestic, incorporated historical societies; or by domestic, incorporated, free public library associations; or by fraternal societies operating

Because we conclude the Synod's properties are statutorily exempt, but that its constitutional claims are without merit, we affirm in part and reverse in part.

## *Facts*

The Synod owns a 30-acre preparatory academy in Prairie du Chien exempted from general property taxes by sec. 70.11(4), Stats. The Synod also owns 11 additional properties within the city, totalling about four acres, used to house pastors and ordained teachers associated with the academy.[3]

In 1980 the Synod requested exemption of the residential lots. The city assessor concluded that the lots did not qualify for tax exemption and entered each on the tax roll. The Synod paid the assessed taxes under protest and served a notice of claim on the city. The city rejected the claim. The Synod brought this action and moved for summary judgment. The trial court, however, granted the city summary judgment under sec.

under the lodge system (except university, college and high school fraternities and sororities), but not exceeding 10 acres of land necessary for location and convenience of buildings while such property is not used for profit. Property owned by churches or religious associations necessary for location and convenience of buildings, used for educational purposes and not for profit, shall not be subject to the 10-acre limitation but shall be subject to a 30-acre limitation. Leasing a portion of such property to an organization which if it owned the property itself would be exempt from taxation under this section and which does not discriminate on the basis of race shall not render the property taxable, if all the leasehold income is used for maintenance.

[3] The Synod actually owns 12 lots within the city, one of which is vacant. An exemption may not be claimed as to premises wholly vacant and unoccupied. *State ex rel. State Asso. of Y.M.C.A. v. Richardson*, 197 Wis. 390, 392, 222 N.W.2d 222, 223 (1928). The Synod apparently seeks no exemption for the vacant lot.

802.08 (6), Stats.,[4] and dismissed the Synod's complaint. The Synod appeals.

### Summary Judgment

In *In re Cherokee Park Plat,* 113 Wis. 2d 112, 115–116, 334 N.W.2d 580, 582–83 (Ct. App. 1983), we said:

> Summary judgment is governed by sec. 802.08, Stats. Its purpose is to determine whether a dispute can be resolved without a trial. Summary judgment methodology must be followed by an appellate court as well as the trial court.
>
> Under that methodology, the court, trial or appellate, first examines the pleadings to determine whether claims have been stated and a material factual issue is presented. If the complaint . . . states a claim and the pleadings show the existence of factual issues, the court examines the moving party's affidavits for evidentiary facts admissible in evidence or other proof to determine whether that party has made a prima facie case for summary judgment. To make a prima facie case for summary judgment, a moving defendant must show a defense which would defeat the claim. If the moving party has made a prima facie case for summary judgment, the court examines the affidavits submitted by the opposing party for evidentiary facts and other proof to determine whether a genuine issue exists as to any material fact, or reasonable conflicting inferences may be drawn from the undisputed facts, and therefore a trial is necessary. [Citations omitted.]

Accordingly, we first review the pleadings to see if a claim is stated.

The Synod's complaint alleges that the city denied it procedural due process guaranteed by the United States

---

[4] Section 802.08 (6), Stats., provides:

If it shall appear to the court that the party against whom a motion for summary judgment is asserted is entitled to a summary judgment, the summary judgment may be awarded to such party even though the party has not moved therefor.

and Wisconsin constitutions because it gave no reasons for refusing to exempt the Synod's residential lots and provided no opportunity for the Synod to be heard. The Synod argued that due process required a hearing on the matter before the tax could properly be levied.

Section 74.73, Stats. (1979–80), governs the procedure for recovering illegal taxes. That section provides in part:

Any person aggrieved by the levy and collection of any unlawful tax assessed against him may file a claim therefor against the . . . city . . . which collected such tax in the manner prescribed by law for filing claims in other cases. . . . If [the] . . . city . . . fails or refuses to allow the claim, the claimant may have and maintain an action against the same for the recovery of all money so unlawfully levied and collected, together with interest at the legal rate computed from the date of filing the claim.

Since the Synod is given its right to judicial review in this action, we conclude that there has been no denial of due process.

The Synod's complaint alleges that the city improperly assessed it $9,443.75 in property taxes in violation of sec. 70.11(4), Stats. It also claims that by denying the exemption the city violated the religion clauses of the first and fourth amendments to the United States Constitution, and denied the Synod equal protection of the laws under the fourteenth amendment to the United States Constitution. Consequently, the Synod claims it is entitled to an award of attorney's fees under 42 U.S.C. sec. 1988. Read liberally, the complaint states a claim. The city's answer joins issue.

We next examine the city's affidavits to determine whether they contain a *prima facie* defense. The city's affidavit states that it denied the Synod tax exempt status for the separate residential properties because sec. 70.11(4), Stats., permits a maximum exemption of

30 acres. The city makes a *prima facie* case for summary judgment.

We next look to the Synod's affidavits and other proof. The Synod presented an affidavit which included four applications by other churches for tax exempt status. It also included 1980 and 1981 tax exemption reports granted to these churches for property used to house pastors, ministers, and nuns. It provided nothing to show that any of those churches had been granted an exemption for more than 30 acres or that the city had attempted to regulate its ministry or declare religious dogma. The Synod's affidavits and proof contain no evidence of conflicting material facts or facts from which reasonable conflicting inferences may be drawn. Thus we conclude that the material facts are undisputed and no trial was necessary.

## Exemption

The parties agree that the 30 acres occupied by the Synod's academy are properly exempted under sec. 70.11 (4), Stats. The issue is whether exempting that 30 acres exhausts the exemptions available to the Synod under sec. 70.11(4). The city argues that it does. The Synod contends that the legislature intended to grant the 30-acre exemption for real property owned and used by a church or religious organization solely for educational purposes, and did not intend to limit the exemptions accorded by sec. 70.11(4) to property used for other purposes.[5]

---

[5] The Synod also contends that sec. 70.11(4), Stats., imposes no acreage limitation on exemptions granted for property owned and used exclusively by churches for the housing of their pastors, ordained assistants, members of religious orders or communities, and ordained teachers. We conclude that the Synod has misread the statute, the plain language of which groups these properties together with those subject to the 10-acre maximum.

Construction of a statute under a particular set of facts is a question of law. *State v. Clausen,* 105 Wis. 2d 231, 243, 313 N.W.2d 819, 825 (1982). We decide questions of law without deference to the trial court's decision. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

The primary source of statutory construction is the statutory language itself. *Northwest General Hospital v. Yee,* 115 Wis. 2d 59, 63, 339 N.W.2d 583, 585 (1983). We conclude that the language of sec. 70.11(4), Stats., though cumbersome, is unambiguous and sufficient in itself to convey the intent of the legislature. We therefore need not look to extrinsic evidence for guidance in its interpretation. *State v. Folk,* 117 Wis. 2d 42, 45, 342 N.W.2d 761, 763 (Ct. App. 1983).[6]

Section 70.11(4), Stats., identifies those property owners entitled to exemption from the general property tax, lists qualifying uses, and limits the amount of property exempted. The first sentence states that exemptions are available in three general categories: Property owned and used exclusively by

---

[6] We have said that the "literal meaning" approach to statutory construction must not be used to avoid an obvious legislative purpose. *State v. S & S Meats, Inc.,* 92 Wis. 2d 64, 70, 284 N.W. 2d 712,.715 (Ct. App. 1979). The statute itself and the record here, however, contain no evidence of an "obvious legislative purpose" to create an either-or choice between a 30-acre exemption for property used for educational purposes and a 10-acre exemption for all other qualified properties. Further, where a statute is plain on its face, intentions cannot be imputed to the legislature. *Honeywell, Inc. v. Aetna Casualty & Surety Co.,* 52 Wis. 2d 425, 429, 190 N.W.2d 499, 501 (1971). Because we conclude the statute is plain under the *Honeywell* rule, we need not consider the literal meaning rule set out in *City of Madison v. Town of Fitchburg,* 112 Wis. 2d 224, 236, 332 N.W.2d 782, 787 (1983) (spirit or intention of statute should govern over literal or technical meaning of language).

(1) educational institutions offering regular courses at least six months of each year;

(2) churches or religious, educational or benevolent associations (including property used for nursing and retirement homes; and housing for pastors and their ordained assistants, members of religious orders and communities, and ordained teachers);

(3) women's clubs; domestic, incorporated free public libraries associations; and fraternal societies operating under the lodge system.

The exemption available in each category is limited to property "not exceeding 10 acres of land." The only other restrictions imposed by sec. 70.11(4) are that the property claimed exempt be "necessary for location and convenience of buildings," that it "is not used for profit," and that if it is leased, "[the lessee] does not discriminate on the basis of race." All uses of exempted property within these limits are implicitly permitted by the statute. That which is intended and implied is as much a part of the statute as that which is expressed. *State Medical Society v. Comm. of Insurance,* 70 Wis. 2d 144, 154, 233 N.W.2d 470, 477 (1975).

The parties do not dispute that the Synod is an eligible "church or religious . . . association" under the statute. Hence, under the first sentence of the subsection, it may claim a property tax exclusion for up to 10 acres of property used for its general, nonprofit purposes.

The second sentence of sec. 70.11(4), Stats., however, speaks specifically to a particular type of land use by some persons within the second category. It provides that property owned by churches or religious associations used for educational purposes—and subject to the other previously mentioned conditions—is not to be subjected to a 10-acre limitation, but to a 30-acre limitation. This separate sentence grants an enlarged exemption only to a portion of the eligible landowners listed in the second category for but one use within the universe of permissible uses under sec. 70.11(4).

Under the plain language of the second sentence of sec. 70.11(4), Stats., property owned and used by a church or religious association solely for nonprofit educational purposes is removed from the 10-acre limitation and made subject to a 30-acre limitation applicable only to that property. Read in context with the balance of the subsection, this also means that property not used for educational purposes is to remain subject to the 10-acre maximum. This interpretation comports with the strict but reasonable construction required of tax exemption statutes. *First Nat. Leasing Corp. v. Madison,* 81 Wis. 2d 205, 209, 260 N.W.2d 251, 253 (1977). We agree with the Synod that the 30-acre exemption was not intended to supplant the exemptions accorded property used for other purposes, but to supplement them.

It is undisputed that the academy property had previously used the Synod's entire 30-acre exemption entitlement within the tax district. The parties also agree that the 11 residential lots are not "used for educational purposes" within the meaning and intent of sec. 70.11 (4), Stats. Thus they cannot qualify for exemption under a provision expressly for properties "used for educational purposes."

We conclude that the lots are subject to the 10-acre limitation applied to properties held for all other permissible uses. Because the 11 lots together do not exceed 10 acres, they are exempt from general property taxes in addition to the previously exempted academy property.[7] We reverse that portion of the judgment denying exemption and direct that judgment be entered for the Synod on its claim for recovery of the taxes it paid under protest, together with interest at the legal rate computed from the date the claim was filed.

[7] See footnote 2.

### Constitutional Claims

Because we have determined that the property in question is statutorily exempt, we ordinarily would not need to reach the Synod's remaining constitutional claims. *Grogan v. Public Service Commission,* 109 Wis. 2d 75, 77, 325 N.W.2d 82, 83 (Ct. App. 1982). However, since the Synod has requested attorney's fees under 42 U.S.C. sec. 1988, we must address these constitutional issues to determine whether it is entitled to such an award. Because the facts are undisputed, these issues are questions of law. *State v. Williams,* 104 Wis. 2d 15, 21–22, 310 N.W. 2d 601, 604–05 (1981). We decide questions of law independently without deference to the decision of the trial court. *Ball, supra* at 537, 345 N.W.2d at 394.

### Equal Protection

The Synod contends that the city denied it equal protection of the laws under the fourteenth amendment to the United States Constitution and art. I, sec. 1 of the Wisconsin Constitution because other churches' properties within the city used for housing clergymen were granted a tax exemption refused the Synod. Equal protection is denied where an ordinance or statute is administered with an unequal hand so as to make an illegal discrimination between persons similarly situated. *Eastman v. City of Madison,* 117 Wis. 2d 106, 116, 342 N.W.2d 764, 769 (Ct. App. 1983).

The only evidence on this issue is the Synod's affidavit and the attached tax records showing that other Prairie du Chien churches were accorded property tax exemptions for housing. There is no proof that the city had granted any of these churches or religious organizations housing exemptions in addition to 30-acre exemptions for property "used for educational purposes." The Synod has thus failed to establish that these ex-

emptions were granted to churches or religious organizations in circumstances substantially similar to its own. We conclude that the Synod did not show that the city arbitrarily administered sec. 70.11(4), Stats., in violation of the Synod's equal protection rights.

### The Religion Clauses

The Synod argues that the city violated the religion clauses of the first and fourteenth amendments to the United States Constitution by declaring that the properties in question were not used to further or promote the Synod's fundamental purposes.[8] The Synod contends this is an impermissible attempt by the city to define religious activities and church functions.

Government may not constitutionally meddle with religion by making determinations regarding matters of faith and religious activities. *Holy Trinity Community School v. Kahl*, 82 Wis. 2d 139, 150–51, 262 N.W.2d 210, 214–15 (1978), *cert. denied*, 439 U.S. 823 (1978). However, the record shows no attempt by the city to define the Synod's ministry or make determinations of religious dogma. The Synod has also failed to show that the city's administrative action implies suspect governmental supervision or regulation of its religious mission.

Further, there is no "establishment of religion" involved in determining that a church or religious organization is entitled to a tax exemption. *United States v. Dykema*, 666 F.2d 1096, 1100 (7th Cir. 1981), *cert. denied*, 456 U.S. 983 (1982), *reh'g denied*, 458 U.S. 1132 (1982) ; *see State ex rel. Reynolds v. Nusbaum*, 17 Wis. 2d 148, 159, 115 N.W.2d 761, 766 (1962) (sec.

---

[8] The record shows only that the assessor had found the Synod's purposes to be "religious and educational." The city's initial denial was based upon a determination that the 11 lots were used for a different purpose: "housing." The city assessor's subsequent erroneous interpretation of sec. 70.11(4), Stats., is not relevant in the context of this claim.

70.11(4), Stats., exemptions are not violative of art. I, sec. 18 of the Wisconsin Constitution). We conclude that a determination denying a tax exemption is similarly not a violation of the religion clauses of the federal constitution.

*Attorney's Fees*

Since the Synod failed to prevail on any of its constitutional claims, it is not entitled to attorney's fees under 42 U.S.C. sec. 1988.

*By the Court.*—Judgment affirmed in part and reversed in part. No costs to either party.