# OVERLOOK FARMS HOME ASSOCIATION, INC., Mr. & Mrs. John Ewig, and Mr. & Mrs. Kenneth Mirecki, Plaintiffs-Appellants,†

## v.

# ALTERNATIVE LIVING SERVICES, Defendant-Respondent.

Court of Appeals

*No. 87–1065. Submitted on briefs December 1, 1987.—Decided February 10, 1988.*

(Also reported in 422 N.W.2d 131.)

† Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Fiorenza & Hodan, S.C.,* by *Theodore J. Hodan,* of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Michael, Best & Friedrich,* by *Thomas P. Godar,* of Milwaukee.

Brief of Amicus Curiae submitted by *Center for Public Representation,* by *Betsy J. Abramson,* of Madison.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

MOSER, P.J. This case raises two issues on appeal which have not been previously decided by the appellate courts of this state. The first issue is whether sec. 46.03(22), Stats., which authorizes group homes in residential neighborhoods despite local zoning ordinances and private restrictive covenants, was intended by the legislature to apply retroactively, thereby voiding existing private covenants. The second issue raised is whether retroactive application of this statute violates the contracts clause of article I, section 10 of the United States Constitution and article I, section 12 of the Wisconsin Constitution. We hold that the intent of the legislature in drafting sec. 46.03(22) was to provide for retroactive application. Furthermore, as applied in this case, retroactive application of the statute is not unconstitutional.

## FACTS

In May 1985, Alternative Living Services (ALS) purchased an existing home at 5762 Finch Lane in Overlook Farms, an upper middle-class subdivision of Greendale, Wisconsin. ALS purchased the home for the purpose of operating a community-based residential facility, more commonly known as a group home. This group home, named "Finch House," was to serve as a residence for up to eight elderly people who

needed some supervision and assistance with medication, meal preparation and other daily needs, but did not require the all-encompassing care of a nursing home. Each resident paid between $1,000 and $1,500 per month to ALS for the housing and services.

Overlook Farms Home Association, Inc. (the Association)[1] brought suit against ALS seeking a permanent injunction preventing ALS from operating Finch House. As grounds for the injunction, the Association alleged that all the property located in the subdivision was subject to a restrictive covenant prohibiting a group home from being operated on any of the lots. This covenant provided: "No lot shall be used except for single family, residential purposes." "Family" was defined as "one or more than one person, living, sleeping, cooking or eating on premises as a single housekeeping unit, and shall exclude a group or groups of persons where three (3) or more persons thereof are not related by blood, adoption, or marriage." The Association argued that since the residents of Finch House did not meet the definition of "family" as provided in the covenant, ALS should be enjoined from operating the residence.

ALS answered that sec. 46.03(22), Stats., allowed Finch House to operate despite the restrictive covenant. This section states:

> (22) Community Living Arrangements. (a) "Community living arrangement" means any of the following facilities licensed or operated, or permitted under the authority of the department: child welfare agencies under s. 48.60, group homes

---

[1]The Association is a Wisconsin corporation representing the interests of all landowners residing in the Overlook Farms subdivision.

for children under s. 48.02(7) and *community-based residential facilities under s. 50.01;* but does not include day care centers, nursing homes, general hospitals, special hospitals, prisons and jails.

(b) Community living arrangements shall be subject to the same building and housing ordinances, codes and regulations of the municipality or county as similar residences located in the area in which the facility is located.

. . . .

(d) A community living arrangement with a capacity for 8 or fewer persons shall be a permissible use for purposes of any deed covenant which limits use of property to single-family or 2–family residences. A community living arrangement with a capacity for 15 or fewer persons shall be a permissible use for purposes of any deed covenant which limits use of property to more than 2–family residences. *Covenants in deeds which expressly prohibit use of property for community living arrangements are void as against public policy.* [Emphasis added.]

The public policy referred to is found in 1977 Wis. Laws 205 which created sec. 46.03(22). Section 1 to chapter 205 states:

Legislative purpose. The legislature finds that the language of statutes relating to zoning codes should be updated to take into consideration the present emphasis on preventing or reducing institutionalization and legislative and judicial mandates to provide treatment in the least restrictive setting appropriate to the needs of the individual. This change in emphasis has occurred as the result of recent advances in corrections, mental health and social service programs. It is the legislature's intent to promote public health, safety and welfare

by enabling persons who otherwise would be institutionalized to live in normal residential settings, thus hastening their return to their own home by providing them with the supervision they need without the expense and structured environment of institutional living. To maximize its rehabilitative potential, a community living arrangement should be located in a residential area which does not include numerous other such facilities. The residents of the facilities should be able to live in a manner similar to the other residents of the area. The legislature finds that zoning ordinances should not be used to bar all community living arrangements since these arrangements resemble families in all senses of the word except for the fact that the residents might not be related. The legislature also finds that deed covenants which restrict or prohibit the use of property for community living arrangements are contrary to the vital governmental purpose of achieving these goals. The legislature believes these matters of statewide concern can be achieved only by establishing criteria which restrict the density of community living arrangements while limiting the types of and number of facilities which can exist in residential neighborhoods having an appropriate atmosphere for the residents, thereby preserving the established character of a neighborhood and community.

The Association responded by claiming that sec. 46.03(22), Stats., was not intended to apply retroactively to a covenant created over a decade earlier. Moreover, if the statute was retroactive, its applica-

tion violated the United States and Wisconsin constitutions.[2]

The trial court, sitting without a jury, held that the legislature did not intend for the statute to apply retroactively. Nevertheless, the court ruled that the statute was constitutional and that ALS could rightfully operate Finch House.[3]

## RETROACTIVITY OF SEC. 46.03(22), STATS.

If sec. 46.03(22), Stats., was intended by the legislature to be applied prospectively only, the restrictive covenant running with the property owned by ALS would prohibit group homes such as Finch House. However, if the statute applies retroactively to a covenant in existence at the time the statute became effective, the covenant would be void and ALS would be able to operate Finch House.

Whether a statute applies retroactively to a particular set of facts is a question of law for which we do not defer to the decision of the trial court.[4] The

---

[2]U.S. Const. art. I, sec. 10 states: "No state shall ... pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts ... ." Wis. Const. art. I, sec. 12 states: "No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed ... ."

[3]Before judgment was entered, the Association notified the trial court that it felt that the court's ruling was inconsistent in declaring the statute prospective only while applying it to the covenant in the case at hand. We share the Association's confusion. However, because the issues raised in this appeal are questions of law, we give no deference to the decision of the trial court. *Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

[4]*Chappy v. LIRC,* 136 Wis. 2d 172, 180, 401 N.W.2d 568, 572 (1987).

general rule in Wisconsin is that statutes are presumed to apply prospectively only unless the statute reveals by express language or necessary implication an intention by the legislature for retroactive application as well.[5] We hold that both the language of sec. 46.03(22), Stats., and its necessary implication reveal a legislative intent to create a statute that is applicable retroactively.

The pertinent language of sec. 46.03(22), Stats., states:

> (d) A community living arrangement with a capacity for 8 or fewer persons *shall be a permissible use* for purposes of any deed covenant *which limits* use of property to single-family or 2–family residences. ... Covenants in deeds *which expressly prohibit* use of property for community living arrangements *are void* as against public policy. [Emphasis added.]

In expressing its purpose in enacting this statute, the legislature stated: "The legislature also finds that deed covenants *which restrict or prohibit* the use of property for community living arrangements *are contrary* to the vital governmental purpose of achieving these goals."[6]

It is difficult to imagine language which would more definitely express the legislature's intent to create a statute that is applicable retroactively. Paraphrased, the language states that any covenant which prohibits community living arrangements is void. The Association's covenant, although created in the 1960's, currently prohibits such living arrangements. Accord-

---

[5] *Id.*

[6] 1977 Wis. Laws 205, sec. 1. (Emphasis added.)

ing to the plain language of the statute, it is therefore void.

The necessary implication of the statute also reveals the legislative intent to make the statute retroactive. If the statute were not retroactive, group homes would be limited to those areas which are not currently restricted by covenant to single-family residences. With only a limited number of these areas available, group homes would gravitate toward them resulting in a large number of group homes located in a small area. This result would be in direct conflict with the legislature's statement that "[t]o maximize its rehabilitative potential, a community living arrangement should be located in a residential area which does not include numerous other such facilities."[7] In order to carry out its purpose, the legislature must have intended that sec. 46.03(22), Stats., apply retroactively to covenants created prior to its enactment.

## THE CONSTITUTIONALITY OF RETROACTIVE APPLICATION OF SEC. 46.03(22), STATS.

Having determined that sec. 46.03(22), Stats., was intended by the legislature to apply retroactively, we must now decide whether such an application is constitutional. In answering this question, we must accept the trial court's findings of historical fact unless they are clearly erroneous.[8] However, whether the statute is constitutional is a question of law, and thus we owe no deference to the trial court's determi-

[7]*Id. See also* secs. 59.97(15) and 62.23(7)(i), Stats.
[8]*Chappy,* 136 Wis. 2d at 184, 401 N.W.2d at 573.

nation.[9] There is a strong presumption that a duly enacted statute is constitutional. A party challenging this presumption must prove beyond a reasonable doubt that the statute is unconstitutional.[10]

As we have previously stated, the Association argues that a retroactive application of sec. 46.03(22), Stats., would violate its rights under article I, section 10 of the United States Constitution and article I, section 12 of the Wisconsin Constitution in that the statute impairs the landowner's contractual obligation to limit the use of his property to single-family residences.[11] While due regard must be given to these constitutional provisions, the United States Supreme Court has held that they must be accommodated to the inherent police power of the state. In *Allied Structural Steel Co. v. Spannaus,*[12] the Court stated: "The Clause is not, however, the Draconian provision that its words might seem to imply. As the Court has recognized, 'literalism in the construction of the contract clause ... would make it destructive of the public interest by depriving the State of its prerogative of self-protection.'"[13] The Court then went on to say:

[9]*Id.*

[10]*Id.* at 184–85, 401 N.W.2d at 573–74.

[11]Although we are not bound to interpret the contract clause of the Wisconsin Constitution in the same manner as the contract clause of the United States Constitution, our supreme court has interpreted our state constitution by relying on United States Supreme Court interpretations of the federal constitution. When interpreting the United States Constitution, however, we are bound by United States Supreme Court interpretations. *Id.* at 186, 401 N.W.2d at 574.

[12]438 U.S. 234, *reh'g denied,* 439 U.S. 886 (1978).

[13]*Id.* at 240, quoting *W.B. Worthen Co. v. Thomas,* 292 U.S. 426, 433 (1934).

First of all, it is to be accepted as a commonplace that the Contract Clause does not operate to obliterate the police power of the States. "It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals." As Mr. Justice Holmes succinctly put the matter . . . : "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter."[14]

Nevertheless, the Court did recognize that the clause must impose *some* limits on the police power of the state to alter existing contractual obligations.[15]

The first step in analyzing a contract clause challenge is to determine if the statute substantially impairs a contractual relationship.[16] The Supreme

---

[14]*Spannaus,* 438 U.S. at 241–42 (citations omitted); *see also State ex rel. Building Owners & Managers Ass'n v. Adamany,* 64 Wis. 2d 280, 294, 219 N.W.2d 274, 281 (1974). ("Every contract is subject to the law of the state when it is written, and will be subject to a law of the state enacted after the bargain if it is in the public interest, under the police power, to attach subsequent conditions to the contract.")

[15]*Spannaus,* 438 U.S. at 242.

[16]*Chappy,* 136 Wis. 2d at 187, 401 N.W.2d at 575.

Court has implied that a statute which defeats a contracting party's expectations constitutes an impairment of the contract.[17] The uncontroverted testimony at trial showed that the expectations of the landowners and the Association were defeated when the restrictive covenant was disregarded. We therefore conclude that sec. 46.03(22), Stats., impaired their contracts.

We also conclude that this impairment was substantial. While the trial court found that the character of the neighborhood had not substantially changed due to the presence of Finch House, it also found that the evidence of the decrease in value of the surrounding residences was uncontroverted. This decrease in value amounted to ten to fifteen percent on residences valued at $125,000 to $150,000. Under the circumstances of this case, this decrease in value constituted a substantial impairment of the contracts of the Association and the landowners as a matter of law.[18]

Where legislation constitutes a substantial impairment of contractual obligations, a significant and legitimate public purpose must be served by it.[19] In the present case, sec. 46.03(22), Stats., satisfies this test. 1977 Wis. Laws 205, sec. 1 states that:

> [i]t is the legislature's intent to promote public health, safety and welfare by enabling persons who otherwise would be institutionalized to live in normal residential settings, thus hastening their return to their own home by providing them with

---

[17]*Spannaus,* 438 U.S. at 245–46.

[18]While the trial court held that the impairment was not substantial, we owe no deference to the trial court decision on questions of law. *Ball,* 117 Wis. 2d at 537, 345 N.W.2d at 394.

[19]*Chappy,* 136 Wis. 2d at 187, 401 N.W.2d at 575.

the supervision they need without the expense and structured environment of institutional living.

This stated purpose is indeed significant and legitimate. Without legislation such as this, the elderly, handicapped and mentally retarded would be forced either to live alone where they cannot sufficiently care for themselves, or be unnecessarily institutionalized where, according to expert testimony, the patients

> give up their independence, they are subject to regulations and specific requirements of living in an institution like a nursing home, become very depressed, sometimes they stop eating, sometimes they become ill, only from the fact that they are at the wrong level of care, not to mention that it's very expensive to maintain someone in a nursing home, if they don't need it.

We would be remiss to hold that legislation directed at ameliorating such effects is not a significant and legitimate public purpose directed at a broad health and social problem.[20]

█

Finally, having a substantial and legitimate public purpose, we must decide whether the statute is based upon reasonable conditions and is appropriate to the public purpose justifying its adoption.[21] "A

---

[20]*See id.* at 190, 401 N.W.2d at 576. One need only look at the great amount of literature concerning this area to discern the importance of legislation such as sec. 46.03(22), Stats. For example, *see* Lippincott, *"A Sanctuary for People": Strategies for Overcoming Zoning Restrictions on Community Homes for Retarded Persons,* 31 Stan. L. Rev. 767 (1978–79); Guernsey, *The Mentally Retarded and Private Restrictive Covenants,* 25 Wm. & Mary L. Rev. 421 (1983–84); Comment, *Can the Mentally Retarded Enjoy "Yards That Are Wide?,"* 28 Wayne L. Rev. 1349 (1982).

[21]*Chappy,* 136 Wis. 2d at 188, 401 N.W.2d at 575.

statute that seeks to modify, by the invocation of the police power, a constitutionally guaranteed right, such as the right of contract, should be carefully drawn to show that the use of such power is necessary and exigent and serves a vital purpose of government."[22]

■

We hold that sec. 46.03(22), Stats., is based upon reasonable conditions and is appropriate to the public purpose expressed by the legislature. It is narrowly drafted and safeguarded from abuses by restrictions put on the operation of community-based residential facilities.[23] It is, therefore, a constitutional exercise of the legislature's police power.

## CONCLUSION

It is undeniable that sec. 46.03(22), Stats., substantially impairs the contractual obligations of the Association and the landowners in Overlook Farms. However, the statute is supported by strong legislative purpose and is properly tailored to fulfill that purpose. The Association has not met its burden of proving that the statute is unconstitutional beyond a reasonable doubt. Therefore, we hold that sec. 46.03(22) does not violate article I, section 10 of the United States Constitution or article I, section 12 of the Wisconsin Constitution.

*By the Court.*—Judgment and order affirmed.

■

---

[22]*Adamany,* 64 Wis. 2d at 303, 219 N.W.2d at 286.

[23]*See, e.g.,* sec. 50.03, Stats. (licensing); secs. 59.97(15) and 62.23(7)(i), Stats. (no facility may be within 2,500 feet of any other); sec. 50.035, Stats. (regulation of facilities); sec. 50.05, Stats. (placement of monitor in facility); and sec. 50.09, Stats. (rights of the residents in the facilities).