SHANNON & RIORDAN, d/b/a Shannon Riordan
Properties, Petitioner-Appellant,†

v.

BOARD OF ZONING APPEALS OF MILWAUKEE,
Respondent.

Court of Appeals

*No. 89-0466. Submitted on briefs August 1, 1989.—Decided
December 20, 1989.*

(Also reported in 451 N.W.2d 479.)

---

†Petition to review pending. This petition was not disposed
of at the time the volume went to press. Its disposition will
be reported in a later volume.

---

716

718

For the petitioner-appellant the cause was submitted on the briefs of *Law Office of Timothy Riordan* by *Timothy Riordan,* of Milwaukee.

For the respondent the cause was submitted on the briefs of *Grant F. Langley,* city attorney, by *David J. Stanosz,* assistant city attorney, of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

MOSER, P.J. Timothy Riordan (Riordan) and Jan Shannon (Shannon) appeal from the trial court's order denying certiorari of an adverse Milwaukee Board of Zoning Appeals (BOZA) hearing. BOZA denied a variance for their three properties to be used as Community Based Residential Facilities (CBRFs). In denying the variance, BOZA relied on sec. 295-14-1 Milwaukee Code of Ordinances, which draws its authority from sec. 62.23(7)(i), Stats. The statute limits the placement of a CBRF within 2,500 feet of any other such facility of the same type. Sec. 62.23(7)(i)(1).

Apparently as a result of the demolition of the Randolph Hotel in downtown Milwaukee, Riordan and Shannon bought and refurbished four residences. Riordan and Shannon purchased the properties to provide housing for those people deprived of housing because of the demolition of the Randolph Hotel and other similarly situated people. What started out as an attempt to provide housing resulted in them also assisting their tenants with medication, money management, health and personal care.

719

In the spring of 1986, the city of Milwaukee building inspector informed Riordan and Shannon that these properties had to be licensed as either rooming houses or as CBRFs. Because of the high level of care given to the tenants, the Wisconsin Department of Health and Social Services, Division of Community Services (DHSS/DCS) determined that Riordan and Shannon had to seek licensure for these residences as CBRFs under sec. 50.03, Stats. This required Riordan and Shannon to obtain a variance from the 2,500 foot limitation to obtain the licenses subject to the proscriptions of sec. 62.23(7)(i), Stats., and Milwaukee ordinance 295-14-1.

Riordan and Shannon initially petitioned BOZA to obtain variances for the four properties to be used as rooming houses, but later amended the request so that the properties could be used as CBRFs. BOZA held a noticed hearing on all four properties on December 3, 1987. On January 6, 1988, the DHSS/DCS forwarded a letter to BOZA noting that Riordan and Shannon had applied for a CBRF license for all four properties and requested a copy of its variance decision. In separate decisions dated March 11, 1988, BOZA granted the CBRF variance for one of the properties and denied the variances for the remaining three properties. The pertinent parts of the formal denials for the properties read as follows:

> The above matter came on for hearing before the Board on December 3, 1987, and executive session February 4, 1988, on appeal from a denial of the Commissioner of Building Inspection of the City of Milwaukee dated June 26, 1986, revised October 2, and 27, 1987, of a request to occupy the entire above subject premises as a Community Based Residential Facility for sixteen (16) residents.
>
> . . ..

720

Section 295-14-1

Community living arrangements such as community based residential facilities may not be located within 2,500 feet of each other.

There is one existing and three proposed community living arrangements located within 2,500 feet of the subject premises.

Appearances: H. F. Schweikart, Planning Administration
George Kuetemeyer, Building Inspection Dept.
Timothy Riordan
Jan Riordan Shannon

The Board of Zoning Appeals, after receiving a report from the City Plan Commission, and having heard the evidence of the applicant, interested parties, and the City of Milwaukee, and being fully advised in the premises,

. . ..

The Board finds that the interpretation of the Milwaukee Code of Ordinances by the Commissioner of Building Inspection is correct in that the use requested is a community living arrangement which is within 2500 feet of another such facility; and

Having found that the use requested was not necessary for the public convenience at this location, since there is an existing community living arrangement within 2500 feet of the subject premises, and

It was determined that the use requested would be an overintensification of the proposed use in this area, thereby having an adverse impact on the neighborhood; and it was further determined that there was no showing that the use was consistent with the spirit, purpose and intent of the ordinance;

Having further found that the use requested will have an adverse impact on the abutting properties and the neighborhood and that there was no showing that the use was necessary for the public convenience

721

at this location; and further that the site contains two principal buildings, (a duplex with a rear cottage) and would overintensify the land use;

IT IS ORDERED:

That upon motion duly made, seconded and carried, a request for a special use exception and variance to use the duplex on the front of the lot on the above subject premises as a community based residential facility for sixteen (16) residents is *denied.*[1]

As a result of the variance denials, the DHSS/DCS advised Riordan and Shannon that it would take no further action on their CBRF license applications for those three properties.

Pursuant to the authority of secs. 62.23(7)(e)10, (i) and 753.04, Stats., Riordan and Shannon commenced this certiorari review in the trial court. They argued that BOZA's application of sec. 295–14–1 of the Milwaukee Code of Ordinances was so arbitrary and capricious that it amounted to an unconstitutional denial of equal protection and due process and that sec. 62.23(7)(i) is unconstitutional.

The trial court decided the matter on briefs. It first noted that BOZA's findings of fact indicated that there was an existing CBRF within 2,500 feet of the Riordan and Shannon buildings.[2] It further noted that BOZA found that the granting of the variance would adversely impact on the abutting properties and overintensify the land use, and thus the variances requested were not nec-

---

[1] That order, for purposes of this decision, is identical to the formal denials of variance for the other two properties.

[2] This CBRF housed 28 men and women with drug addiction problems. It should be noted that the record also reflects that there was a child welfare agency home housing 43 boys that was also within 200 feet of Riordan and Shannon's three buildings.

essary for the public convenience. The trial court held that BOZA was faced with a discretionary decision when it denied the variance. It therefore held when a determination is within the scope of the powers conferred upon BOZA, and it is not arbitrary or capricious, there is no violation of the property owner's constitutional rights. The court held that BOZA's decision was not arbitrary or capricious, and it was supported by the record. The court further determined that the evidence clearly showed that there was an existing CBRF within 2,500 feet of the petitioners' properties, and it was proper for BOZA to deny the variances since they would violate the statutory 2,500 foot limitation on the placement of CBRFs.

In conclusion, the court held that the statute[3] and the Milwaukee ordinance[4] were not unconstitutional and did not infringe on the petitioners' constitutional rights.

---

[3]Sec. 62.23(7)(i)1 reads as follows:

(i) *Community and other living arrangements.* For purposes of this section, the location of a community living arrangement, as defined in s. 46.03(22), a foster family home or adult family home, as defined in s. 50.01(1), in any city shall be subject to the following criteria:

1. No community living arrangement may be established after March 28, 1978 within 2,500 feet, or any lesser distance established by an ordinance of the city, of any other such facility. Agents of a facility may apply for an exception to this requirement, and such exceptions may be granted at the discretion of the city. Two community living arrangements may be adjacent if the city authorizes that arrangement and if both facilities comprise essential components of a single program.

[4] Milwaukee Code of Ordinances, 295–14–1 reads as follows:

**295–14. Special Conditions.** 1. GROUP LIVING FACILITIES. Foster homes operated by corporations, child welfare agencies, churches, associations or public agencies, community living arrangements and community correctional residential centers may not be located within 2,500 feet of each other and their cumulative capaci-

The trial court specifically held that there was no denial of constitutional equal protection because there was no evidence in the record that the petitioners were members of a suspect class or that they had a fundamental right to a variance. Since the legislative purpose of the 2,500 foot limitation on the placement of CBRFs is to avoid over-intensification of these housing arrangements in any one area, the court held that this type of classification was a rational method adopted to preserve and protect communities. Thus, the court affirmed BOZA's decision.

On this appeal, Riordan and Shannon argue that BOZA's denial of the variances allowing their properties to be used as CBRFs[5] was arbitrary and capricious. Thus, the appellants argue that BOZA's decision amounted to an unconstitutional denial of equal protection or due process. Appellants also argue that BOZA's decision unconstitutionally denied them of their right to freely exercise their religious beliefs and to worship.

## DUE PROCESS AND EQUAL PROTECTION

The appellants argue that they were denied constitutional due process and equal protection because

ties may not exceed one percent of an aldermanic district's population.

[5]Sec. 50.01(1g), Stats., reads as follows:

(1g) "Community-based residential facility" means a place where 3 or more unrelated adults reside in which care, treatment or services above the level of room and board but not including nursing care are provided to persons residing in the facility as a primary function of the facility, except that the department may approve an application from a nursing home which serves fewer than 20 residents and which otherwise meets the definition of this subsection to be licensed and regulated as a community-based residential facility. "Community-based residential facility" does not include any of the following: . . ..

BOZA's denial of their variance request was arbitrary, capricious and unreasonable. The appellants contend that the state statute and the ordinance do not establish a rational relationship with a CBRF, which requires "personal care" in the form of "assistance with the activities of daily living, such as eating, dressing, bathing and ambulation."[6] Further, the effect of BOZA's denial would require the appellants to operate the three properties under the CBRF exemption for a building in which room and board are provided.[7] They further argue that the statutory spatial restrictions under secs. 50.03 and 62.23(7)(i)1, Stats., forces this type of housing to be limited to the poorer areas of the community and not to be disbursed throughout the community.

Parties aggrieved by a denial of a zoning variance by a board of zoning appeals seek their relief by commencing certiorari. A court may reverse or affirm, wholly or partly, or may modify the agency decision brought for review.[8] A review of an agency decision is limited to: "(1) whether the board acted within its jurisdiction and authority; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive or unreasonable; and (4) whether the evidence was such that the board might reasonably make the determination

---

[6] *See* sec. 50.01(4o), Stats.

[7] Sec. 50.01(1g)(d), Stats., provides that a CBRF does not include: "[a] place that provides lodging for individuals who are ambulatory and that may also provide board, information, referral, advocacy, job guidance and social services case management and intervention to those individuals but that does not provide personal care or health care."

[8] *See* sec. 62.23(7)(e)10, Stats. *See also State ex rel. Schwochert v. Marquette County Bd. of Adjustment,* 132 Wis. 2d 196, 202, 389 N.W.2d 841, 844 (Ct. App. 1986).

it did."[9]

Zoning statutes and ordinances are presumed to be valid and constitutional.[10] One who attacks them must prove unconstitutionality beyond a reasonable doubt.[11] Abuse of the legislative discretion on equal protection grounds must be proved beyond a reasonable doubt.[12] Before such zoning measures can be declared unconstitutional, and thus arbitrary and unreasonable, it must be shown that they have no substantial relation to the public health, safety, morals, or general welfare.[13]

"The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."[14] The equal protection clause allows states wide latitude when social or economic legislation is at

[9] *Ledger v. City of Waupaca Bd. of Appeals,* 146 Wis. 2d 256, 261, 430 N.W.2d 370, 371–72 (Ct. App. 1988).

[10] 5 E. McQuillin *Municipal Corporations* sec. 19.13.30 (3rd rev. ed. 1989); 2A N. Singer, *Sutherland Statutory Construction* sec. 45.11 (Sands 4th rev. ed. 1984); *City of Fond du Lac v. Miller,* 42 Wis. 2d 323, 328, 166 N.W.2d 225, 227 (1969); *Cushman v. City of Racine,* 39 Wis. 2d 303, 306, 159 N.W.2d 67, 69 (1968); *Petersen v. Dane County,* 136 Wis. 2d 501, 508–09, 402 N.W.2d 376, 380 (Ct. App. 1987).

[11] *Petersen,* 136 Wis. 2d at 509, 402 N.W.2d at 380; *Quinn v. Town of Dodgeville,* 122 Wis. 2d 570, 577, 364 N.W.2d 149, 154 (1985).

[12] *State v. Hart,* 89 Wis. 2d 58, 64, 277 N.W.2d 843, 846 (1979).

[13] *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395 (1926); *Clark v. County of Winnebago,* 817 F.2d 407, 408–09 (7th Cir. 1987).

[14] *City of Cleburne, Texas v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440 (1985).

issue.[15] That general rule gives way when statutes classify by race, alienage, or national origin.[16] Such state laws are subject to strict scrutiny and will be sustained only if they are tailored to a compelling state interest.[17] Strict scrutiny is employed when the legislation "impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class."[18]

The United States Supreme Court has held that zoning statutes and ordinances which restrict land use to one-family dwellings are constitutional;[19] and the requirement of a special use permit for a group home classified as a "hospital for the feebleminded" under a zoning ordinance as unconstitutional.[20] In both cases, the Supreme Court utilized the rational relation test because the legislative classification concerned the family and the mentally retarded involving social and economic acts of the legislature. Thus, the aggrieved parties were not members of a suspect class nor were there any fundamental rights involved. Therefore, the Supreme Court analyzed whether there were rationally related bases for the classifications.

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312 (1976) (footnote omitted).

[19] *Village of Belle Terre v. Boraas,* 416 U.S. 1 (1974). The Supreme Court analyzed a New York ordinance that defined "family" as one or more persons related by blood, adoption, or marriage, or not more than two unrelated persons, living and cooking together as a single housekeeping unit and expressly excluding lodging, boarding, fraternity, or multiple-dwelling houses. *Id.* at 2.

[20] *Cleburne,* 473 U.S. 432, 447–50.

In Wisconsin, when legislation is constitutionally challenged on equal protection grounds, the first step in the analysis of a particular statute or ordinance is to establish beyond a reasonable doubt that the legislation is unconstitutional. " 'Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality.' "[21] Equal protection is denied where legislation is "administered with an unequal hand so as to make an illegal discrimination between persons similarly situated."[22] There is no denial of equal protection as long as there is a reasonable basis for the classification.[23] If the classification does not involve a suspect class, such denial comes about only if the legislature has made an irrational or arbitrary classification.[24] The appellate standard of review for a statutory classification is the rational basis test, unless the challenged statute affects a "fundamental right" or creates a classification based on a "suspect class."[25] If there is a fundamental right or suspect class involved, the challenged legislation must

---

[21] *Oliver v. Travelers Ins. Co.*, 103 Wis. 2d 644, 647, 309 N.W.2d 383, 385 (Ct. App. 1981) (quoting *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 46, 205 N.W.2d 784, 792 [1973]).

[22] *Wisconsin Evangelical Lutheran Synod v. City of Prairie du Chien*, 125 Wis. 2d 541, 552, 373 N.W.2d 78, 84 (Ct. App. 1985).

[23] *State ex rel. Jones v. Gerhardstein*, 141 Wis. 2d 710, 733, 416 N.W.2d 883, 892 (1987).

[24] *Id.*

[25] *In re K.C. v. D.H.S.S.*, 142 Wis. 2d 906, 916, 420 N.W.2d 37, 40 (1988).

pass "strict scrutiny."[26] Under the rational basis test, if there is any reasonable basis to justify the classification, we must uphold the law.[27] The courts are obliged to locate or construct, if possible, a rationale that might have influenced the legislative determination.[28] It is to be noted that the equal protection guarantee under the United States and the Wisconsin Constitutions are substantially equivalent, and thus, the same legal analysis for constitutionality is employed.[29]

We hold that the statute and the ordinance in this case must be reviewed under a rational relationship test because they address social and economic policy. This legislation does not involve a suspect class or fundamental right; therefore, the strict scrutiny test need not be applied.

The spatial limits of the statute and ordinance legislation are social because the statute and ordinance call for CBRF housing that provides community living arrangements for non-related people who suffer from controlled mental disabilities due to heredity, environmental, alcohol or drug-related conditions. They are economic because they allow persons in the community to provide needed housing for the unrelated mentally disabled up to, but not including, nursing care in homes dispersed throughout the community while still making a profit for their investment and labors. This type of legislation does not conflict with either state or federal equal protection because the persons aided are not a suspect class, nor are any of their fundamental rights

[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.* at 915, 420 N.W.2d at 40.

violated. The rational relationship test is employed here because the purpose of this legislation is to disperse those CBRFs throughout the community, and not to overintensify a proposed area with CBRFs.[30] The statute and ordinance involved in this case have a reasonable and rational basis which provides this form of housing to be dispersed throughout the community without over-intensifying their location into limited geographical areas.

The appellants also argue that the CBRF statute and ordinance intolerably create prohibitive classification between CBRFs[31] and excluded rooming houses[32] because the two subsections are indistinguishable. The appellants contend that it is a denial of equal protection to provide that rooming houses can be anywhere without any limitations while restricting the CBRFs to the 2,500 foot limitation. The two subsections of the statute are clearly distinguishable. Under the statute, CBRFs can provide the same features that a rooming house can, but in addition, a CBRF house can provide medical care for the individual mentally disabled person up to what is known as nursing care, such as assisting the tenants with their medications, money management, health, and providing personal care as Riordan and Shannon did for their tenants. Under the statute, a rooming house can provide both room and board, but not any kind of medical care. These two types of residences are clearly distinguishable, and there is a rational basis for this legislation.

---

[30] *See Overlook Farms Home Assoc., Inc. v. Alternative Living Servs.,* 143 Wis. 2d 485, 494, 422 N.W.2d 131, 134 (Ct. App. 1988).

[31] *See* sec. 50.01(1g), Stats. (CBRFs).

[32] *See* sec. 50.01(1g)(d), Stats. (rooming houses).

We conclude that the appellants have failed to prove beyond a reasonable doubt that the legislation in question is unconstitutional on equal protection grounds. We further conclude that the state and city legislatures did not abuse their discretion by adopting the 2,500 foot limitation for CBRFs. Thus, BOZA's discretionary denial of the variances was not arbitrary or unreasonable and the trial court's denial of certiorari was correct.

The appellants also claim that BOZA's action was a denial of due process. However, the appellants have not discussed their due process argument or cited to any authority in their brief, and thus, we reject this issue. An issue raised but not briefed or argued is deemed abandoned.[33]

They also argue in their appellate brief that BOZA's arbitrary and unreasonable application of the statutory 2,500 foot proscription gives rise to a federal cause of action for damages pursuant to Title 42 U.S.C. sec. 1983. This claim was not raised before BOZA nor was it raised in the trial court. An issue not raised before the agency generally cannot be raised on judicial review.[34] It is also true that appellate courts will generally not review issues raised for the first time on appeal, even though they have power to do so.[35]

---

[33] *In re Estate of Balkus v. Security First Nat'l Bank of Sheboygan Trust Dep't,* 128 Wis. 2d 246, 255 n. 5, 381 N.W.2d 593, 598 n. 5 (Ct. App. 1985).

[34] *See Goranson v. DILHR,* 94 Wis. 2d 537, 545, 289 N.W.2d 270, 274 (1980).

[35] *Wirth v. Ehly,* 93 Wis. 2d 433, 443–44, 287 N.W.2d 140, 145–46 (1980).

Lastly, the appellants claim that they were denied their federal right to practice their religion. Statutes that implicate conflict with the free exercise clause and the religious establishment clause are of the highest order of the state's interest.[36] When called upon to determine legislative constitutionality in relation to the free exercise clause, courts must note that "[a] way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation" if it is based on purely secular considerations, because such claims must be vested in religious belief to receive the protection of the religion clauses.[37] The concept of ordered liberty precludes allowing people to make their own standards of conduct where society has important interests.[38] This is especially true if the choice is personal rather than religious, because the claims do not rise to the demands of the religion clauses of the United States Constitution.[39] The Supreme Court has required state courts to impose a test for statutory constitutionality[40] which the Wisconsin Supreme Court has stated is as follows: "1. Does the act [the law challenged] reflect a secular legislative purpose? 2. Is the primary effect of the act to advance or inhibit religion? 3. Does the administration of the act foster an excessive governmental entanglement with religion? 4. Does the implementation of the act inhibit

---

[36] *Wisconsin v. Yoder,* 406 U.S. 205, 215 (1972).

[37] *Id.*

[38] *Id.* at 215-16.

[39] *Id.* at 216.

[40] *See Tilton v. Richardson,* 403 U.S. 672, 678 (1971); *Lemon v. Kurtzman,* 403 U.S. 602, 612-13 (1971).

the free exercise of religion?"[41] "Government may not constitutionally meddle with religion by making determinations regarding matters of faith and religious activities."[42]

The requirements of sec. 62.23(7)(i)1., Stats., and the ordinance 295-14-1 are for purposes of housing mentally and developmentally disabled persons within community licensed houses known as CBRFs. They are purely secular and they are not created with the intent to advance or to inhibit religion. Since the persons involved in this type of housing can be religious or nonreligious, the legislation's administration and promulgation does not involve the government in any religious entanglement regarding either the religious establishment clause or free exercise clause. The implementation of this legislation does not in any manner inhibit the religious freedom of the mentally disabled involved nor do they inhibit the appellants' free exercise right. Their claim really only involves a virtuous and admirable way of life they have chosen for themselves, which may not be imposed as a barrier to reasonable state regulations such as the requirements of the legislation in question. The appellants' choice here is personal rather than religious. Also, they would have obtained some secular economic gain from their choice, if it had been approved. Thus, the appellants have failed to meet any burden of proof of unconstitutionality.

BOZA's discretionary determination in denying the appellants' variances was within its statutory authority. It was also accomplished by legitimate consideration of

---

[41] *See State ex rel. Warren v. Nusbaum,* 55 Wis. 2d 316, 323, 198 N.W.2d 650, 653-54 (1972). *Tilton,* 403 U.S. at 678.

[42] *Wisconsin Evangelical Lutheran Synod,* 125 Wis. 2d at 553, 373 N.W.2d at 84.

the concerns for the public health, safety, morals and general welfare of the community of Milwaukee. Therefore, BOZA's actions in denying the variances for the reasons given was not arbitrary or unreasonable. The trial court was correct in rejecting a statutory certiorari remedy for the appellants.

*By the Court.*—Order affirmed.

FINE, J. (*dissenting*). The majority affirms the Milwaukee Board of Zoning Appeals' refusal to grant a zoning variance to Jan Shannon and Timothy Riordan for the operation of Community Based Residential Facilities on three properties owned by Shannon and Riordan. Certiorari review of the Board's refusal is limited to the following issues:

> (1) whether the board kept within its jurisdiction;
> (2) whether it proceeded on [a] correct theory of law;
> (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

*Snyder v. Waukesha County Zoning Bd.,* 74 Wis. 2d 468, 475, 247 N.W.2d 98, 102 (1976). In analyzing whether the Board "might reasonably" make its determination, the "inquiry is limited to whether there is substantial evidence to support" that determination. *See Van Ermen v. Dep't of Health & Social Servs.,* 84 Wis. 2d 57, 64, 267 N.W.2d 17, 20 (1978). I dissent because the Board's denial of the zoning variance was contrary to the overwhelming and non-disputed evidence that the variances were required before Shannon and Riordan could provide essential social services to persons who would live in the facilities, and was not based on *any evidence*

before it that would support its findings.[1]

The zoning ordinance, sec. 295-14-1 of the Milwaukee Code of Ordinances, provides, as material to this case, that "community living arrangements . . . may not be located within 2,500 feet of each other . . .." It is based on sec. 62.23(7)(i)1, Stats., which provides, in pertinent part:

> No community living arrangement may be established after March 28, 1978, within 2,500 feet, or any lesser distance established by an ordinance of the city, of any other such facility. *Agents of a facility may apply for an exception to this requirement, and such exceptions may be granted at the discretion of the city.*

(Emphasis added.) The Board's rationale in rejecting the requested variances were identical:

> First, the Board found that the "use requested is a community living arrangement which is within 2500 feet of another such facility."
>
> Second, the Board "found that the use requested was not necessary for the public convenience at this location, *since there is an existing community living arrangement within 2500 feet of the subject premises.*" [Emphasis added.]
>
> Third, the Board "determined that the use requested would be an overintensification of the proposed use in this area, thereby having an adverse impact on the neighborhood" and the "abutting properties."

---

[1]Consideration of the Board's actions in light of the appropriate standard of review as explicated in *Snyder* must be our initial inquiry. Since the Board's decisions cannot withstand even this limited scrutiny, the majority's excursion into constitutional analysis is not warranted.

Fourth, the Board "determined that there was no showing that the use was *consistent with the spirit, purpose and intent of the ordinance.*" [Emphasis added.]

The only finding that does not rest on the variance-would-be-inconsistent-with-the-ordinance rationale is the Board's determination that the variances, if granted, would have "an adverse impact on the neighborhood" because of the alleged "overintensification." Neither the city, the trial court, nor the majority have pointed to *any evidence* in the record before the Board to support this conclusion; indeed, all of the evidence before the Board was to the contrary.

First, the City Plan Commission of the City of Milwaukee notified the Board by letters dated November 4, 1987, that the proposed uses for which the variances were sought "would not have an adverse impact on the abutting property and the adjacent neighborhood."

Second, the community's alderman, Marlene E. Johnson, notified the Board by letters dated December 3, 1987, that she had no objection to the Shannon and Riordan requests, and wrote that she hoped they would "receive favorable consideration."

Third, fifty-one neighbors of the proposed Community Based Residential Facilities signed petitions affirming their lack of objection.

Fourth, a representative of Milwaukee's Building Inspection Department testified that he had inspected the properties, and found that Shannon and Riordan were "really reliable." Furthermore, he told the Board that Shannon was "very dedicated," having made helping those who would be served by the facilities "her life's work." He noted: "I would rather live next to this type of operation than I would a rooming house [for which a variance from sec. 295-14-1 of the Milwaukee Code of

736

Ordinances would not be necessary] because you may find some of these same people living in rooming houses without any supervision, without any medication."

Fifth, the Board gave notice of the hearing to the neighbors of the proposed facilities, and no one appeared to oppose the variance.

Finally, there was substantial and undisputed evidence that the proposed facilities would fulfill a critical community need.

The Board is appropriately vested with broad discretion. But "[d]iscretion is not synonymous with [raw] decision-making." *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512, 519 (1971).

The very purpose of a variance is to ameliorate the hardships created by the application of a zoning ordinance. *State ex rel. Skelly Oil Co. v. Common Council,* 58 Wis. 2d 695, 701, 207 N.W.2d 585, 587 (1973). The Board's rejection of the variance requests merely because the resulting use would not be consistent with the zoning ordinance ignores this truism, and violates sec. 62.23(7)(i)1, Stats., which, as we have seen, specifically *permits* exceptions to the 2,500-foot requirement.

The Board ignored the only evidence before it, evidence that clearly established not only a need for the facilities, but that there would be *no* "adverse impact on the neighborhood" and the "abutting properties." The Board thus did not exercise its judgment but, rather, imposed its will; it eschewed the required "process of reasoning" that "must depend on facts that are of record." *See McCleary,* 49 Wis. 2d at 277, 182 N.W.2d at 519. This was an abuse of discretion. *See ibid.*

The order of the circuit court should be vacated, and the cause remanded with directions to reverse the Board's decision denying the requested variances. *See*

sec. 62.23(7)(e)10, Stats., ("The [circuit] court may reverse . . . the decision brought up for review.").