Thomas TATEOKA and Jami Tateoka, Petitioners-
Respondents,

v.

CITY OF WAUKESHA BOARD OF ZONING APPEALS,
Respondent-Appellant.

Court of Appeals

*No. 97–1802. Submitted on briefs May 7, 1998.—Decided June 24, 1998.*

(Also reported in 583 N.W.2d 871.)

On behalf of the respondent-appellant, the cause was submitted on the brief of *Curt R. Meitz*, city attorney, and *Julie M. Gay*, assistant city attorney.

On behalf of the petitioners-respondents, the cause was submitted on the brief of *Timothy J. Andringa*, of *Cramer, Multhauf & Hammes* of Waukesha.

An amicus curiae brief was filed by *Claire Silverman, assistant legal counsel, the League of Wisconsin Municipalities*.

Before Brown, Nettesheim and Anderson, JJ.

NETTESHEIM, J. The City of Waukesha Board of Zoning Appeals appeals from a trial court order directing the Board to hold a hearing on Thomas and Jami Tateokas' request for a zoning variance. The

court ruled that the Board's denial of the variance request was arbitrary, capricious and unreasonable and denied the Tateokas due process and equal protection under the law. The Board's decision was based on its rule that an application for a variance which has been previously considered and denied must be accompanied by a summary of facts evidencing a substantial change in circumstances such that a rehearing is warranted. Because the Board had previously denied the same variance request and because the Tateokas failed to show a substantial change of circumstances, the Board denied the variance request. The Board argues on appeal that its rule governing rehearings, reconsiderations and reapplications is reasonable and does not violate the Tateokas' due process and equal protection rights.

We conclude that the Board's rule is reasonably related to the purpose of the rule which is to bring certitude and finality to decisions by the Board. We therefore conclude that the rule does not violate the Tateokas' due process and equal protection rights. Because we conclude that the Board did not exceed its jurisdiction in adopting the rule and because the Board's action in denying the Tateokas' variance request was not arbitrary and capricious, we reverse the circuit court order.

## FACTS

The facts relevant to the issues on appeal are undisputed. In January 1996, the Tateokas purchased property in the city of Waukesha. The broker represented to the Tateokas that the property was a duplex and was taxed as such by the city of Waukesha assessor's office. The Tateokas moved onto the property in February 1996 and began renting out the upper unit.

When the Tateokas placed a "for rent" sign in their front yard in September 1996, they received a letter from Marv Lemke, the city of Waukesha housing inspector, advising them that they could not rent the upper unit of the property because the applicable zoning did not allow residential units to be used as duplexes unless certain requirements were met.

In November 1996, the Tateokas requested a variance allowing them to use the property as a duplex. Michael Hoeft, the director of planning and staff assistant to the Board, informed the Tateokas that the matter would not be placed on the Board's agenda because the same variance request for the same property had been previously considered and denied by the Board. The earlier variance request was made in August 1995 by prospective purchasers of the property. Hoeft's response was based on a rule adopted by the Board on or about January 3, 1995. It provides as follows:

> Rehearings, reconsiderations and new applications seeking the same relief concerning the same property after a previous application has been denied will not be heard by the Board of Appeals unless a substantial change of conditions or circumstances has intervened between the time the matter was first decided by the Board of Appeals and the subsequent application. A change of ownership or the passage of time without additional conditions or circumstances will not justify another hearing before the Board.

Hoeft explained that the Tateokas' application failed to summarize in writing the substantial change of conditions or circumstances which had occurred since the prior denial in August 1995.

On December 6, 1996, the Tateokas filed a mandamus action requesting the circuit court to order the Board to place the Tateokas' variance request on the Board's agenda at the next meeting. On December 12, 1996, the parties entered into a stipulation whereby the Board agreed to hear the Tateokas' request on January 7, 1997. The stipulation further provided that if the Board denied the Tateokas' request based upon the challenged rule, the trial court retained jurisdiction to decide all issues raised in the Tateokas' mandamus petition. At the hearing, the Board refused to consider the Tateokas' request on the merits because they had not demonstrated a substantial change of conditions or circumstances. Accordingly, the matter returned to the circuit court.

At the circuit court hearing on February 14, 1997, only the Tateokas appeared. After hearing arguments from the Tateokas, the court decided to issue a writ of mandamus against the Board. However, before formally issuing the writ, the court adjourned the matter to allow for an appearance by the Board.

On March 4, 1997, the circuit court conducted a teleconference with the parties. At this hearing, the Board questioned whether mandamus was now the proper remedy since the Board had granted the Tateokas a hearing. Therefore, the court allowed the Tateokas to amend their action to one sounding in certiorari. The court issued its oral decision on May 9, 1997. The court found that the policy adopted by the Board violated the Tateokas' equal protection and due process rights. The court stated: "[The Board's] decision is based on an incorrect theory of law that is arbitrary, that is oppressive, and it is unreasonable because it denies due process, and it denies equal protection of the laws." The trial court remanded the

matter to the Board for a hearing on its merits. The Board appeals. The League of Wisconsin Municipalities has filed an amicus curiae brief in support of the Board's rule.

## DISCUSSION

The Tateokas' mandamus petition was amended to that of a writ of certiorari under § 62.23(7)(e)10, STATS. In certiorari proceedings, we review the decision of the agency, not the trial court. *See Clark v. Waupaca County Bd. of Adjustment*, 186 Wis. 2d 300, 303, 519 N.W.2d 782, 784 (Ct. App. 1994). Because the zoning board is an administrative body, *see State ex rel. Nagawicka Island Corp. v. City of Delafield*, 117 Wis. 2d 23, 26, 343 N.W.2d 816, 818 (Ct. App. 1983), our scope of review is limited to: (1) whether the Board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question, *see Clark*, 186 Wis. 2d. at 304, 519 N.W.2d at 784.

At the outset, we emphasize the focus of this appeal. The Tateokas' variance request stated, in part, that the Tateokas sought the variance because it was represented to them at the time of their purchase that the property qualified as a duplex and that they could rent out the upper unit. The Tateokas apparently did not contend in the proceedings before the Board, and they certainly did not contend in the proceedings before the circuit court, that this fact constituted a "substantial change of conditions or circumstances" or "additional conditions or circumstances" under the rule

such that the Board should have granted their request. Thus, we make no judgment whether the facts stated in the request may have actually satisfied the rule. Instead, the Tateokas' circuit court challenge targeted the validity of the rule itself.

In addition, we recognize that the Board did, in fact, ultimately conduct a hearing on the Tateokas' request. Thus, the rule, which envisions no hearing, was not literally applied against the Tateokas. Nonetheless, the basis for the Board's rejection of the Tateokas' request was the Tateokas' failure to show the requisite change in circumstances required by the rule. Therefore, we address the validity of the rule.

The issues presented are whether (1) the Board exceeded its jurisdiction by adopting a rule requiring that applications for rehearings, reconsiderations and reapplications be accompanied by a summation of facts evidencing a substantial change of circumstances since the previous denial, (2) the rule violates an applicant's due process and equal protection rights, and (3) the Board's application of the rule to the Tateokas' request was arbitrary and capricious.[1]

Although not controlling on the issue before us, we begin by noting that respected commentators in the

---

[1] The Tateokas also dispute whether a zoning board is an administrative body. They cite to EUGENE MCQUILLEN, THE LAW OF MUNICIPAL CORPORATIONS § 25.262 (3d ed. 1994), for the proposition that "it is equally well established that Zoning Boards of Appeals are quasi judicial bodies." However, the Tateokas do not cite to any Wisconsin cases which support their position nor do they indicate how this distinction affects the issues on appeal. In light of *State ex rel. Nagawicka Island Corp. v. City of Delafield*, 117 Wis. 2d 23, 26, 343 N.W.2d 816, 818 (Ct. App. 1983), which expressly states that a zoning appeals board is an administrative body, we refer to the Board as such.

area of municipal law have observed that a rule such as the one at issue in this case is widely accepted. With respect to rehearings, THE LAW OF MUNICIPAL CORPORATIONS observes: "In the interest of finality of decisions by zoning boards rehearings should not be lightly granted. . . . The rule in some states is that, unless new facts or conditions have arisen since the first determination, the board has no right to reopen the proceedings and set aside its former decision." EUGENE MCQUILLEN, THE LAW OF MUNICIPAL CORPORATIONS § 27.274, at 412 (3d ed. 1994) (footnotes omitted). As for new applications for the same relief, such as the one submitted by the Tateokas, the same commentator explains:

> A zoning board may ordinarily entertain new or successive applications for the same relief, based upon changed conditions or new circumstances, although it is a general rule that after an application or petition has been decisively acted upon by a zoning board no new application or petition touching the same subject matter may be presented to the board within a designated time, or within a reasonable time. *Where a new application is made, however, it is essential that changed conditions or circumstances be shown. A board is not required to hear a second application which is precisely the same as a prior one which had been disposed of by the board.*

*Id*. at § 25.275, at 416 (emphasis added; footnotes omitted). *See also* 3 E.C. YOKLEY, ZONING LAW AND PRACTICE § 18–10, at 183 (4th ed. 1979) ("Where a zoning board denies a variance, it will not be permitted, at a subsequent hearing on the same facts, to reverse itself. . . . Absent a change in conditions between the two hearings, a board will not be permitted to *review* and *reverse*

its former action."); 3 EDWARD H. ZIEGLER, JR., RATHKOPF'S THE LAW OF ZONING AND PLANNING § 37.08, at 123–24 (4th ed. 1998) ("After an application for a variance or a special permit has been denied, the board may consider a new application with respect to the same property, and even for the same relief, if either the plans submitted or the conditions affecting the property have substantially changed.").

We now turn to the Tateoka's challenges. The Tateokas first contend that the Board exceeded its "jurisdictional limitations when it adopt[ed] a 'rule' which denies a property owner who has never applied for a variance the right to even have a hearing on the merits." They contend, and the trial court agreed, that the Board's rule conflicts with § 62.23(7)(e)6, STATS., which provides a legal right to have an application for a variance heard before the Board. We disagree.

Section 62.23, STATS., governs city planning. Subsection (7) of that statute provides in relevant part that "[f]or the purpose of promoting health, safety, morals or the general welfare of the community, the council may regulate and restrict by ordinance ... the ... use of buildings." If a city council enacts zoning regulations, it shall by ordinance provide for the appointment of a board of appeals which may grant exceptions to the regulations. *See* § 62.23(7)(e). Waukesha county has enacted zoning regulations and, pursuant to WAUKESHA, WIS. MUNICIPAL CODE § 3.05(1) (1983), has appointed a board of zoning appeals.

Pursuant to § 62.23(7)(e)3, STATS., "[t]he board shall adopt rules in accordance with the provisions of any ordinance adopted pursuant to this section." Section 3.05(2) of the Code provides: "The Board shall organize and adopt rules for its own government." The rule at issue in this case was adopted by the Board on

January 3, 1995, and has been fully in force since that date. Under the Board's rule, persons requesting relief which has previously been denied must attach to their application a summary or documentation setting forth a change of facts or circumstances justifying a rehearing.

The Tateokas argue that the rule conflicts with § 62.23(7)(e)6, STATS., which provides in part: "The board of appeals shall fix a reasonable time for the hearing of the appeal or other matter referred to it, and give public notice thereof, as well as due notice to the parties in interest, and decide the same within a reasonable time." The Tateokas contend that this statute provides "a legal right to have their application for a variance heard before the Board" and that "[t]he rule making authority granted under Wis. Stats. § 62.23(7)(e)3 does not allow the Board to completely circumvent Wis. Stats. § 62.23(7)(e)6 which mandates that a hearing be held." We disagree with the Tateokas' reading of § 62.23(7)(e)6.

Statutory construction presents a question of law which we review de novo. *See Stockbridge School Dist. v. DPI*, 202 Wis. 2d 214, 219, 550 N.W.2d 96, 98 (1996). The primary goal of statutory construction is to ascertain the legislature's intent, and the first step in the process is to look to the plain language of the statute. *See State v. Sostre*, 198 Wis. 2d 409, 414, 542 N.W.2d 774, 776 (1996). When interpreting a statute we properly consider the language of the entire section at issue, and also that of related sections. *See State v. Barnes*, 127 Wis. 2d 34, 37, 377 N.W.2d 624, 625 (Ct. App. 1985).

■ Section 62.23(7)(e)6, STATS., governs the time period within which the Board should hear and decide a variance request and the notice which is to be given before doing so. Contrary to the Tateokas' interpretation, this statute does not mandate a hearing for each and every variance application. Rather, once an application which satisfies the legal requirements is filed, the statute requires a hearing within a reasonable time period and with the appropriate notice. Were we to accept the Tateokas' reading of the statute, the Board would be obligated to hear every application regardless of whether it complied with the relevant legal requirements governing its content. Such an interpretation borders on the unreasonable. It also would render meaningless the power provided to the Board by statute and under the Code to make rules for its own government.

Next, the Board challenges the trial court's holding that the rule violates the Tateokas' due process and equal protection rights. The Tateokas maintain on appeal that the rule, as administered, denies them due process of law and equal protection because it applies to those persons who did not themselves bring the first petition before the Board. The Tateokas contend that this renders the Board's action arbitrary, capricious and unreasonable because it was based on an incorrect theory of law. We disagree.

■

We first address the Tateokas' contention that the rule violates their right to due process. It is undisputed that an individual appearing before a board is entitled to a fair and impartial hearing under common law concepts of due process and fair play. *See Marris v. City of Cedarburg*, 176 Wis. 2d 14, 24, 498 N.W.2d 842, 847

(1993). Whether the Tateokas were denied due process presents a question of law which we review de novo. *See State ex rel. Warren v. Schwarz*, 211 Wis. 2d 710, 715, 566 N.W.2d 173, 176 (Ct. App. 1997), *aff'd*, 219 Wis. 2d 616, 579 N.W.2d 698 (1998). When there is a constitutional challenge to an administrative rule, the court must decide whether the regulation adopted by the agency is reasonably related to a legitimate governmental objective. *See Liberty Homes, Inc. v. DILHR*, 136 Wis. 2d 368, 371, 401 N.W.2d 805, 806 (1987). "To find that an agency rule is reasonably related to a legitimate governmental objective there must be facts of record which demonstrate a reasonable basis for the agency's rule." *Id.* at 371, 401 N.W.2d at 806–07.

■

The Tateokas' due process challenge is based on their contention that the law does not support the proposition that "a denial of a variance to a petitioner under one set of circumstances constitutes a denial to a different petitioner requesting the same or similar variance in the future." However, the Tateokas' characterization of the rule is incorrect. A denial of a petition under one set of circumstances does not constitute a denial to a different petitioner requesting the same variance *if the circumstances underlying the request have changed.* The rule does not bar petitioners, such as the Tateokas, from a forum; it merely sets out a threshold requirement which must be met before their request is placed on the agenda. We therefore reject the Tateokas' challenge to the rule on this ground.

We further reject the Tateokas' contention that the Board's rule is not reasonably related to a legitimate governmental interest. According to Donald Tikalsky, chairman of the Board, "The rule was adopted for the purpose of bringing certitude and finality to a decision

of the Board and to prevent applicants from simply resubmitting applications at any time without qualification after the Board had previously rendered a decision concerning the use of the property." The Board's rule eliminates petitions for the same variance requests from being brought under the same facts. We discern no persuasive reason why the Board should be required to revisit variance requests already denied, notwithstanding a change of ownership of the property, if the facts underlying the Board's denial have not changed. In the words of Tikalsky, the rule brings "certitude and finality" to a decision of the Board. We deem that a legitimate purpose. As such, the rule does not violate the Tateokas' due process rights.

Next, we turn to whether the rule violated the Tateokas' right to equal protection. Equal protection in the context of zoning laws means that those in similar circumstances, among whom no reasonable basis for distinction exists, must be treated equally. *See Browndale Intern'l, Ltd. v. Board of Adjustment*, 60 Wis. 2d 182, 203–04, 208 N.W.2d 121, 132 (1973). "There is no denial of equal protection as long as there is a reasonable basis for the classification." *Shannon & Riordan v. Board of Zoning Appeals*, 153 Wis. 2d 713, 728, 451 N.W.2d 479, 484 (Ct. App. 1989). Unless the challenged statute affects a fundamental right or creates a classification based on a suspect class, our standard of review for a statutory classification is the rational basis test. *See id.* at 728, 451 N.W.2d at 484–85. Under that test, if there is any reasonable basis to justify the classification, we must uphold the law. *See id.* at 729, 451 N.W.2d at 485.

The Board contends that the rule does not deny equal protection because it provides a reasonable basis

for classification of individuals entitled to be heard and such classification is related to a legitimate governmental interest. The Tateokas argue that the Board's rule denies them equal protection of the law because it precludes people who purchase property which has already been the subject of a variance request from making a similar request based on their own facts and circumstances of hardship. However, the Tateokas' statement of this argument does not correctly represent the rule. If the Tateokas have facts and circumstances of hardship not presented in the prior request, then such new information might constitute the change in circumstances required by the rule. In fact, as we have already noted, the Tateokas' application does present information not stated in the prior application (the incorrect representation of the property as a legal duplex), but they made no claim that this information satisfied the rule. Therefore, on this threshold basis, the Tateokas' equal protection argument is suspect. Nonetheless, we will address the argument in greater detail.

"Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." *State v. Post*, 197 Wis. 2d 279, 321, 541 N.W.2d 115, 130 (1995) (quoting *Baxstrom v. Herold*, 383 U.S. 107, 111 (1966)), *cert. denied*, 117 S. Ct. 2507 (1997). As we have already concluded, the rule which classifies applications for rehearings serves a legitimate purpose because it reasonably promotes the finality of the Board's decisions and avoids the inefficiency which would result from revisiting the same issues when there has been no underlying change of circumstances. We hold that the

rule does not violate the Tateokas' right to equal protection.

Finally, we address whether the Board's actions in denying the Tateokas' variance request was arbitrary and capricious. The Board contends that it "acted in a reasonable and rational manner in upholding its previous denial of a variance to use the property . . . as a duplex unit . . . given the lack of any change in circumstances or conditions in the intervening fifteen months." We agree. Although the Tateokas contend that they have a right to a rehearing, this is true only if they present facts showing a change of circumstances since the previous application was denied. The Tateokas did not do so. We therefore conclude that the Board's application of the rule to the Tateokas' application was not arbitrary or capricious.

## CONCLUSION

We conclude that the Board did not exceed its jurisdiction when it adopted the rule at issue in this case and that the rule does not conflict with § 62.23(7)(e)6, STATS. We further conclude that the rule is reasonably related to the Board's legitimate interest in efficiency and the finality of its decisions. As such, the rule does not violate the Tateokas' right to due process and equal protection. Finally, we conclude that the Board's decision to deny the Tateokas' variance request was not arbitrary and capricious in light of its failure to provide facts evidencing a change of circumstances. Accordingly, we uphold the Board's decision and reverse the trial court's order.

*By the Court.*—Order reversed.